UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

---

JAMES COOLEY, an individual, and
MORGAN COOLEY, an individual,

      Plaintiffs,

v.

ELIZABETH MARCUS, an individual,

      Defendant.

Case No. 1:23-cv-00086

Hon. Hala Y. Jarbou

---

### PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

Plaintiffs James Cooley and Morgan Cooley ("Plaintiffs"), by and through their attorneys, Innovative Law Group, in response to Defendant Elizabeth Marcus' ("Defendant") *Motion To Dismiss Pursuant To Fed. Civ. P. 12(B)(6),* state as follows:

### FACTS

Defendant willfully misappropriated six pictorial and audiovisual works that were each created and copyrighted by Plaintiffs.  Defendant stole Plaintiffs' works knowing that they belonged to Plaintiffs.  But Defendant's malice did not stop there. Defendant used Plaintiffs' copyrighted works to produce and publish a video that maliciously defamed, harassed, and invaded the privacy of Plaintiffs and their minor child.  Defendant raised over $32,000 with a GoFundMe page that features the defamatory video.  To make matters worse, Defendant contends that malicious defamation, harassment and invasion of privacy is "fair use" of Plaintiffs' copyrighted works.

**Plaintiffs' Creation of the Copyrighted Works**

Plaintiffs are part of a band of religious musicians who seek to reflect the purity and holiness of our Savior in all that they do. Their ultimate goal is to help others connect with the Lord through music and publications and to bring them closer to His heart.  Whether performing at a concert venue, leading worship in a church setting, or participating in teaching settings, worship videos and pictures can enhance and magnify the band's performance and audience reception.

As a way of amplifying the audio and visual effect of the band at performance events, Plaintiffs created audiovisual and pictorial images that characterized the band's nature and purpose.  In creating these works, Plaintiffs thoughtfully considered content, personalities, impressions, poses, background, lighting, and setting.  They spent time preparing, taking and saving the audiovisual and pictorial works.  The works had to artfully impart the intended worship and teaching objectives.

**The Copyrighted Works**

The creative works which Plaintiffs developed were given names descriptive of the audience impressions that Plaintiffs hope to convey.  The titles are:

- "Laughter"
- "The Cooley's and Elle"
- "Heart-Storming with the Lord"
- "Heart Storming"
- "Reflections and Worship"
- "Day at the Beach"

Plaintiffs' pictorial and audiovisual works are original and copyrighted under the Copyright Act (the "Copyrighted Works").  The copyrights are owned and are the exclusive property of James Cooley and Morgan Cooley.

2

James Cooley is the holder of the exclusive rights to the works "Laughter" and "Day at the Beach." His copyrighted works are the product of his time and creativity. "Day at the Beach" also portrays Plaintiffs' minor son.

Morgan Cooley is the holder of the exclusive rights to the works "The Cooley's and Elle" and "Heart Storming." Her copyrighted works are the product of her time and creativity. "The Cooley's and Elle" also portrays Plaintiffs' minor son.

Morgan Cooley and James Cooley are the holders of the exclusive rights to the works "Heart-Storming with the Lord" and "Reflections and Worship." Their copyrighted works are the product of their time and creativity. "Heart-Storming with the Lord" also portrays Plaintiffs' minor son.

### Malicious Misappropriation

On June 15, 2021, Defendant published a GoFundMe page which includes an infringing video (the "Video").[1]   In the Video posted on Defendant's GoFundMe page, Plaintiffs were maliciously defamed, harassed, and their privacy invaded.[2] Defendant published Plaintiffs' Copyrighted Works including those containing their infant child. Defendant made no attempt to blur the identify of Plaintiffs' minor child.  Defendant used Plaintiffs' Copyrighted Works to make false and defamatory statements about Plaintiffs in the Video.

When Defendant created the GoFundMe page on June 15, 2021, she expressly stated in the post that the commercial purpose of the GoFundMe was to *raise money to produce a feature length documentary*. Ultimately, Defendant received over $32,000 from donors as a result of the

---

[1] The Video is attached as Exhibit 5 to Defendant's Brief.
[2] See Defendant's Exhibit 2, Plaintiffs' Counter-Complaint, ¶¶ 50, 57, 70-81, Case No. 22-07446-CZ, *Lorene Roskamp et al v James Peter Cooley et al*; Kent County Circuit Court, Hon. Christina Elmore.

Video. On June 17, 2021, Defendant also published the same Video on YouTube which quickly reached 18,994 views.

After Plaintiffs filed their Counter-Complaint alleging defamation, harassment, and invasion of privacy, Defendant took down the GoFundMe page and YouTube video.  If Defendant truly was making a documentary, these would not have been taken down and the fundraising stopped.  This further establishes the bad faith and illicit purpose behind Defendant's infringement of the Copyrighted Works.

## Bad Faith Use of Copyrighted Works

Defendant's use of the Copyrighted Works in the Video was for the purpose of defaming, harassing, and invading the privacy of Plaintiffs and their minor son.[3]  Defendant is claiming ignorance of the specific Copyrighted Works, and is requesting to have the Copyrighted Works reproduced again as part of Plaintiff's pleadings.  This only doubles down on Defendant's invasion of Plaintiffs' privacy.  To be clear, some of the Copyrighted Works include an image of Plaintiffs' minor child.  Online posting of a picture of a minor child is subject to federal regulation and case law designed to protect the privacy of minor children.[4]  Defendant's use of Copyrighted Works in the Video, including Copyrighted Works containing clear images of Plaintiffs' minor child, already violate and invade the privacy of Plaintiffs and their minor child.

Defendant personally copied the Copyrighted Works, and therefore knows which pictures and audiovisual works are involved.  Given the fact that Defendant already knows exactly which Copyrighted Works are involved, Defendant's request to reproduce them again is an egregious

---

[3] Id.
[4] See, for example, the Children's Online Privacy Protection Act (COPPA), which was amended effective July 1, 2013. Operators of commercial web sites and online services (including mobile apps) that collect, use, or disclose personal information from children under 13 are subject to regulations that protect the privacy of personal information of minor children. The definition of personal information after July 1, 2013, also includes photos and videos that contain a child's image.

intrusion into Plaintiffs' personal lives and the life of their minor child.  This is particularly malevolent since Defendant's objective in posting the infringing Video to begin with was to defame, harass and intrude into Plaintiffs' privacy.

Plaintiffs brought a Counter-Complaint against Defendant for defamation, harassment, and invasion of privacy.[5]  Subsequently, in apparent recognition of the infringing nature of the Video, Defendant removed the GoFundMe page and the YouTube publication.  If Defendant genuinely thought there was "fair use" or "*de minimis* use" of the misappropriated Copyrighted Works, Defendant would not have taken down the infringement.  Why has the fundraising stopped?  Why has no documentary been produced in the year and nine months since the Copyrighted Works were infringed?  Defendant's actions are in bad faith.

## LAW AND ARGUMENT

To survive a motion to dismiss for failure to state a claim, a complaint must allege sufficient facts to state a facially plausible claim to relief. *Ashcroft v Iqbal,* 556 US 662; 129 SCt 1937; 173 Led2d 868 (2009). To determine whether a complaint states a facially plausible claim, the court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the nonmovant's favor. *Blankenship v USA Truck, Inc,* 601 F3d 852 (8th Cir 2010). The factual allegations must be sufficient to "raise a right to relief above the speculative level." *Bell Atl Corp v Twombly,* 550 US 544; 127 SCt 1955; 167 Led2d 929 (2007). The court must construe the complaint "liberally." *Luney v SGS Auto Servs, Inc,* 432 F3d 866 (8th Cir 2005).

---

[5] See Defendant's Exhibit 2, Plaintiffs' Counter-Complaint, ¶¶  50, 57, 70-81, Case No. 22-07446-CZ, Lorene Roskamp et al v James Peter Cooley et al; Kent County Circuit Court, Hon. Christina Elmore.

I.   **PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO STATE A FACIALLY PLAUSIBLE CLAIM TO RELIEF.**

Defendant's argument that the Complaint fails for lack of specificity is defeated by Defendant's third argument that use was "*de minimis.*"  Defendant could not possibly claim that use of each of the Copyrighted Works was *de minimis* unless Defendant absolutely knows which Copyrighted Works were copied.  Defendant personally copied the Copyrighted Works, and knows which ones were infringed.  Defendant even submits as Exhibit 6 the Video containing the specific pictorial and audiovisual works that are copyrighted, and for which Defendant contends use is *de minimis.*  Defendant knows exactly which Copyrighted Works are the subject of copyright infringement since Defendant contends use of each of the Copyrighted Works was *de minimis.*

Plaintiffs sufficiently identify each of the Copyrighted Works in the Complaint.[6]  The Complaint identifies which photographs and audiovisual works are infringed by reference to names and copyright registrations for each of the Copyrighted Works.[7]  Plaintiff  identifies the copyright registration that relates to each one and attaches each as an exhibit to the Complaint. Plaintiffs' Complaint and Exhibits list the names and registration numbers of the Copyrighted Works.

To state a claim for copyright infringement, Plaintiffs are not required to display images of the Copyrighted Works in pleadings.  A court acting on a motion to dismiss for failure to state a claim may review documents relied upon in a complaint, even if not attached, without converting the motion into one for summary judgment. *Blackstone Realty LLC v FDIC*, 244 F3d 193 (CA 1, 2001).  Defendant unquestionably knows which photographs were claimed to be

---

[6] See Complaint, ¶¶ 8-34.
[7] Id.

infringed because Defendant tries to claim use is *de minimis*. *See Warren v John Wiley & Sons, Inc,* 952 F Supp 2d 610 (SDNY, 2013).

Plaintiffs have pled all of the required elements of copyright infringement.[8]  "A properly pleaded copyright infringement claim must allege (1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts during what time the defendant infringed the copyright." *Kelly v LL Cool J*, 145 FRD 32 (SDNY 1992).

Defendant argues that Plaintiffs' Complaint fails for lack of specificity because it "provides no reproductions of the allegedly infringed works themselves, nor even descriptions of them." However, this is not a requirement of a properly pleaded copyright infringement claim. Plaintiffs need only "allege…that [they] own the copyrights in those works." *Kelly*, *supra,* 145 FRD at 36. To require Plaintiffs to do more would be to subject them to a heightened level of pleading, something this Court is strictly proscribed from doing. See *Mid America Title Co v Kirk*, 991 F2d 417, 421-22 (7th Cir 1993) (noting that it would be inappropriate to hold a copyright infringement claim to a heightened pleading standard).

Defendant also argues that Plaintiffs "do not identify where and/or how in that video the alleged misappropriation of each unidentified work occurs." Defendant can easily identify this since it was Defendant that created the infringing Video.  Furthermore, this is not a requirement to state a claim upon which relief can be granted.  Plaintiffs' allegations are specific enough to meet the requirements of Rule 12(b)(6). In their Complaint, Plaintiffs properly allege that Defendant infringed their Copyrighted Works by the infringing Video published on GoFundMe

---

[8] See, Complaint, ¶¶ 8-34.

and YouTube. See *Complaint at ¶¶ 35-49, 50-71.* Plaintiffs also properly allege that Defendant had no authorization to copy or display the Copyrighted Works. See *Complaint at ¶¶ 72-78.*

Notice pleading, not fact pleading, is all that is required to survive a motion to dismiss under Rule 12(b)(6). See *Pacific Stock, Inc v Pearson Educ, Inc,* No 11 Civ 0423, 2012 WL 93182, at 6 (D Haw Jan 11, 2012) (rejecting Pearson's argument that Plaintiffs was "required to allege the precise manner in which [Pearson] exceeded each license," as "Pearson may, in an abundance of caution, assume that it is being accused of violating each license in every way identified"); see also *Frerck v Pearson Educ, Inc,* No 11 Civ 5319, 2012 WL 1280771, at 3 (ND Ill Apr 16, 2012) (rejecting Pearson's argument that, in order to state a claim for copyright infringement, Frerck must plead specific details as to each infringing act," as "[t]his requirement would impose a higher burden on copyright claims than is required under the federal rules. Notice pleading, not fact pleading, is all that is required to survive a motion to dismiss under Rule 12(b)(6))." Here, Plaintiffs' allegations provide sufficient notice to Defendant as to how the Copyrighted Works have been infringed. It is not fatal to Plaintiffs' copyright claim that their Complaint fails to specify how each particular photograph has been infringed. See *Warren v John Wiley & Sons, Inc*, 952 F Supp 2d 610 (SDNY, 2013).

Defendant's claim that it is "impossible for Defendant to know with any certainty what the [copyrighted works] look like . . ." is without merit.  Ironically, in Section III of the Brief, Defendant identifies the very images that are Copyrighted Works and contends that such use is *de minimis.*  This argument is equally unpersuasive because the descriptions of the Copyrighted Works are made apparent by the title of the copyright registrations themselves. With titles like "Day at the Beach," it is easy to ascertain which photographs the copyright registrations are referring to, *as Defendant did in her Motion*. Moreover, it can be reasonably ascertained that out

of the nine (9) photographs and videos displayed in Defendant's Video, Plaintiffs could only have claims to the seven (7) in which they or their infant child appear. Regardless, Defendant may, for purposes of this motion, assume that it is being accused of violating each license in every way identified. *Pacific Stock, Inc, supra*.

Defendant is basically asking this Court to require all discoverable information to be included in a Complaint.  Fact pleading is not required. Defendant has ample time for discovery if Defendant seeks more information.

## II.   PLAINTIFFS ARE ENTITLED TO ACTUAL DAMAGES BY VIRTUE OF INFRINGER'S PROFITS

Plaintiffs are entitled to actual damages and injunctive relief from infringement of the Copyrighted Works. Defendant profited approximately $32,000 from the infringing Video. "The copyright owner is entitled to recover the actual damages suffered…as a result of the infringement, and any profits of the infringer that are attributable to the infringement *and are not taken into account in computing the actual damages*. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 USC § 504(b). The award of the alleged infringer's profits examines the facts only from the alleged infringer's point of view. *On Davis v Gap, Inc*, 246 F3d 152, 159 (2d Cir 2001).  If the alleged infringer has earned a profit, this award makes him disgorge the profit to ensure that he does not benefit from his wrongdoing and the award of the owner's actual damages looks at the facts from the point of view of the copyright owner; it undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal act. See *Fitzgerald Publ'g Co v Baylor Publ'g Co*, 807 F2d 1110, 1118 (2d Cir 1986); *Walker v Forbes*, Inc, 28 F3d 409, 412 (4th Cir 1994); *On Davis v Gap, Inc*, *supra*.

### III.    PLAINTIFFS' COMPLAINT STATES VALID CLAIMS

#### A.  Defendant's Misappropriation of the Copyrighted Works was not *de minimis*.

Defendant claims that use of Plaintiffs' copyrighted media was *de minimis* because each appearance only lasts three (3) to four (4) seconds. However, Defendant misappropriated the entirety of the pictorial works, not just a portion.  Defendant's *de minimis* argument fails as to the four pictures in the Copyrighted Works because all of the image was copied.[9]

Defendant misappropriated the two audiovisual Copyrighted Works because they were clearly copied and clearly shown in the Video.  The fact Defendant copied the Copyrighted Works is indisputable.  The portions that were shown in the Video are unquestionably identical to portions of the Copyrighted Works.  Defendant's publication of an exact copy of a portion of the audiovisual Copyright Works, meets the threshold for determining the degree of similarity which suffices to demonstrate actionable infringement. See *Laureyssens v Idea Group Inc,* 964 F2d 131, 139-40 (2d Cir 1992).

Plaintiffs' Copyrighted Works are displayed for a total of twenty-seven (27) seconds out of Defendant's two minute-thirty second Video. This is not *de minimis* copying. Fully eighteen percent (18%) of Defendant's Video consists of Plaintiffs' Copyrighted Works. Eighteen percent is far more than in cases holding that use was not *de minimis*. See *Ringgold v Black Entmt Television, Inc*, 126 F3d 70 (CA 2, 1997) (holding that a total of twenty-six (26) seconds of a five (5) minute scene was not *de minimis* copying; 8.7% of the scene is not *de minimis*). Even if the amount copied is very slight in relation to the work as a whole, which it is not, copying of portions of Plaintiffs' Copyrighted Works is still a basis for copyright infringement. *See, e.g., Iowa State University Research Foundation, Inc. v. American Broadcasting Companies, Inc.,* 621

---

[9] Plaintiffs also intend to amend their Complaint to add another two instances of misappropriation of Plaintiffs' creative works.

F2d 57, 59, 61-62 (2d Cir 1980) (television program's copying of portions of copyrighted film, including an eight second segment).

A helpful analogy in determining whether the purpose and duration of the segments should be regarded as *de minimis* is in the regulation issued by the Librarian of Congress providing for royalties to be paid by public broadcasting entities for the use of published pictorial and visual works. See 37 C.F.R. § 253.8 (1996) (implementing 17 USC § 118(b)). The Librarian appoints the Register of Copyrights, who serves as the director of the Copyright Office. See 17 U.S.C. § 701. The Librarian's regulation distinguishes between a "featured" and a "background" display, setting a higher royalty rate for the former. Id. § 253.8(b)(1)(i)(A), (B). The Librarian has concluded that use of a copyrighted visual work even as "background" in a television program normally requires payment of a license fee. Moreover, the Librarian has defined a "featured" display as "a full-screen or substantially full screen display for *more than three seconds*," *id*. § 253.8(b)(2), and a "background" display as "[a]ny display less than full-screen or substantially full-screen, or full-screen *for three seconds or less*," *Id*. Thus, if Defendant's Video were to be shown on public television, Plaintiff would appear to be entitled to both "featured" and "background" license fees.

### B.  Defendant's use of Plaintiff's Copyrighted Works in the Video was not "Fair Use."

Defendant's use of the Copyrighted Works in the Video was to defame, harass, and invade the privacy of Plaintiffs and their minor child. For purposes of this Motion, these allegations must be accepted as true.  The burden of proving fair use is upon Defendant. After Plaintiffs sued Defendant in their Counter-Complaint for defamation, Defendant took down the infringing Video from GoFundMe and YouTube.  This creates an inference that Defendant's use

was defamatory, harassing, and intrusive into Plaintiffs' privacy and the privacy of their minor child.  It negates Defendant's claim of fair use.

The "fair use" exception "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Dr. Seuss Enters, LP v Penguin Books USA, Inc,* 109 F3d 1394 (9th Cir 1997). Courts consider four factors in the "fair use" analysis: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 USC § 107. For the reasons explained below, Defendant's use does not qualify as "fair use."

> ### i.   *A reasonable jury could find that the purpose and character of use of the Copyrighted Works in the Video was something other than comment, criticism and news reporting.*

Defendant falsely claims that use of the Plaintiffs' Copyrighted Works is "fair use" as comment, criticism or news reporting. Fair use for copying from another's work is to provide "comment on *it* or criticism of *it.*" Defendant was not commenting on or criticizing Plaintiffs' Copyrighted Works.  As a matter of fact, Defendant was maliciously and falsely defaming and harassing Plaintiffs and their minor child, and intruding into their privacy.  Defamation, harassment, and invasion of privacy is never "fair use."  Claims that Plaintiffs are "murderers" and "kidnappers" are even illegal defamation *per se*. Violation of the law is never "fair use." There is absolutely no comment on or criticism of the Copyrighted Works themselves in the Video.

Defendant willfully misappropriated Plaintiffs' Copyrighted Works in the Video for the commercial purpose of *soliciting donations,* not commenting on or criticizing Plaintiffs' Copyrighted Works. When Defendant created the GoFundMe page on June 15, 2021, Defendant expressly stated that the purpose of the GoFundMe was to *raise money to produce a feature length documentary*. In Defendant's own words:

> **"[W]e also want this story to educate and caution other parents, students and young women to keep them from falling prey to the same potential danger. We've contacted a documentary film production company to produce a feature length documentary. *Producing a documentary is expensive*. But the exposure, the education and the impact can be enormous and far reaching. Not just now, but for years to come. The content will live on a variety of social media platforms as well as streaming services. *What you've watched is just a glimpse*.**
> **. . .**
>
> ***With the help of our family, friends and social media, we believe we can quickly raise needed funds to produce the film, interview all participants, pay for all facets of production, licensing, permits, insurances, associated travel expenses and attorneys fees*."**

Defendant's own statements establish the Video was intended to raise money, like other GoFundMe pages. Fundraising is not commenting on or criticizing the Copyrighted Works. While Defendant may contend that the purpose of the Video is to inform or criticize, Defendant's own fundraising statement contradicts this claim. The Video itself was commercially successful in raising about $32,000 in donations. If Defendant's purpose was truly to criticize, provide commentary or generally inform, she could have posted it *anywhere else* other than GoFundMe, arguably the most popular crowdfunding website on the internet.

Defendant relies on *Hosseinzadeh v Klein* for the position that use of the Copyrighted Works constitutes criticism or comments. 276 F Supp 3d 34 (SDNY 2017). However, in *Klein,* Defendants reposted Plaintiff's copyrighted video content for the purpose of providing comment or criticism on the *video content itself.* In this matter, Defendant did not provide comment or

criticism on the *photographs or audiovisual works themselves.* Rather, Defendant included the Copyrighted Works in the Video for the purpose of soliciting money.

Defendant also relies on *In re DMCA Subpoena to Reddit, Inc*, for the position that use of the Copyrighted Works constitutes criticism or comments. 441 F Supp 3d 875 (ND Cal 2020). However, Defendant in *Reddit* put the copyrighted material on a forum expressly dedicated to criticism and declared that his sole purpose was to criticize the organization and spark discussion about it. Conversely, GoFundMe is a crowdfunding website *utilized for the sole purpose of raising money* for various causes.  It is not a forum expressly dedicated to criticism, and Defendant did not declare that the sole purpose was to criticize.  To the contrary, Defendant expressly stated that the purpose was to *raise money to fund a feature-length documentary.*

Defendant argues that use of the Copyrighted Works constitutes news reporting.  The Video was the opposite of news reporting.  It was defamatory, harassing, and invasion of privacy. This is not "news reporting," but illegal conduct. Some statements constitute defamation *per se* since they claim Plaintiffs were murderers and kidnappers. The statements in the Video were false, and never happened.[10]   The promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use news report. *Harper & Row*, 471 US at 557, 105 S Ct 2218.

It is beyond dispute that Defendant *expressly* stated that the purpose of the GoFundMe was to *raise money to produce a feature length documentary*. Fundraising is not news.

Defendant seemingly relies on *Monster Communications, Inc v Turner Broad Sys, Inc*, 935 F Supp 490 (SDNY, 1996). However, in *Monster Communications*, the copyrighted material was a film about Muhammed Ali and George Foreman, two figures of legitimate public concern.

---

[10] See Defendant's Exhibit 2, Plaintiffs' Counter-Complaint, Case No. 22-07446-CZ, *Lorene Roskamp et al v James Peter Cooley et al; Kent* County Circuit Court, Hon. Christina Elmore.

Hence, the court determined that the first fair use factor was cut in favor of the Defendant. Here, at the time Defendant created the Video, Plaintiffs were not figures of public concern. Moreover, just because a photograph is created for personal use and subsequently used for "news" does not mean subsequent use was fair. See *Otto v Hearst Communications, Inc*, 345 F Supp 3d 412 (SDNY, 2018).

### ii.   The nature of the Copyrighted Work was creative rather than factual.

Defendant asserts that Plaintiffs' Copyrighted Works was factual rather than creative simply because the photographs and videos are "factual depictions of Elle Roskamp and Plaintiffs." This is false. The Copyrighted Works were created and intended to enhance and magnify the band's performance and audience reception, whether at a concert venue, in a church setting, or in teaching settings.   Plaintiffs created audiovisual and pictorial images that characterized the band's nature and purpose, as a way of amplifying the audio and visual effect of the band's performance events.  This is unquestionably creative.

All pictures and audiovisual works may contain some degree of factual depiction. However, a photograph's informational purpose "does not negate a finding of imaginativeness or creativity." *Mathieson v Associated Press*, No 90-cv-6945 (LMM), 1992 WL 164447, at 6 (SDNY June 15, 1992). "Although photographs are often 'factual or informational in nature' the art of photography has generally been deemed sufficiently creative to make the second fair use factor weigh in favor of photographer-plaintiffs." *Barbaran v Time Warner, Inc*, No 99-cv-1569 (JSM), 2000 WL 358375, at 4 (SDNY Apr 6, 2000).

Like the staged photograph in *Barbaran,* Plaintiffs' Copyrighted Works were not spontaneous and the subjects, Plaintiffs included, posed themselves in a way to control the lighting and background. It is indisputable that Plaintiffs and Elle set the scenes of these

photographs before taking them. The Copyrighted Works did not "just happen." In James Cooley's pictorial work titled "Laughter," the subjects placed themselves in a specific place and way to ensure a favorable background and pose. The same can be said for James Cooley's pictorial work titled "Day at the Beach," wherein the subjects took a timed photo so as to establish a certain background and pose. In "The Cooley's and Elle" Plaintiffs use a specific background setting, camera setting, lighting and pose for the pictorial work. In "Heart-Storming with the Lord" Plaintiffs spent time preparing the materials for the audiovisual work, set the background in a way that was favorable to the camera as well as placing lights in specific places to favor the background. In "Heart Storming" Plaintiffs and Elle are strategically posing to announce their image for commercial use, setting the scene and the image they wished to portray. In "Reflections and Worship" James Cooley sets the camera in a background favorable to the scene. Plaintiffs also prepare the background prior to the start of the video and fix the lighting. Based on these factors, the photographs are more creative than factual and favors Plaintiffs. See *N Jersey Media Grp Inc v Pirro*, 74 F Supp 3d 605, 620 (SDNY 2015) (finding that the second factor favored fair use where the defendant "did not create the scene or stage his subjects—to the contrary, he plainly acknowledged that the photograph 'just happened.'"). There exists a certain degree of creativity exercised by Plaintiffs in posing and composing the Copyrighted Works.

### iii. The amount and substantiality of the use in relation to the Copyrighted Work was neither minimal nor reasonable.

The third factor, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," weighs against a finding of fair use. 17 USC § 107(3). Defendant used all of the image that was copyrighted, and substantially enough of the audiovisual works to represent the Copyrighted Works as a whole.  Essentially, all of the Copyrighted Works were infringed.

Courts will ask "whether the quantity and value of the materials used are reasonable in relation to the purpose of copying." *Campbell v Acuff-Rose Music, Inc*, 510 US 569; 114 S Ct 1164; 127 L Ed 2d 500 (1994). The more of a copyrighted work that is taken, the less likely the use is to be fair." *Infinity Broad Corp v Kirkwood*, 150 F3d 104, 109 (2d Cir 1998). The third factor of the fair use inquiry is influenced heavily by the first factor, focusing on whether 'the extent of … copying' is consistent with or more than necessary to further 'the purpose and character of the use." *Campbell, supra.*

Defendant relies on *Nunez*. However, this matter is notably different from *Nunez* as a core part of the Court's analysis was rooted in the fact that the newspaper's use of the photograph was transformative. *Nunez v Caribbean Intern News Corp*, 235 F3d 178 (1st Cir 2000). Therefore, in that instance, providing a full-scale version of the photograph provided context for potential readers to understand the piece. In this matter, Defendant's use was not transformative. Defendant used the entireties of the Copyrighted Works without any changes.  Since there is no transformative appearance to the Copyrighted Works, the third factor weighs in favor of Plaintiffs.

### iv. There is a presumption of market harm to Plaintiffs because Defendant's use of their Copyrighted Works was for a commercial purpose.

The fourth and last fair use factor examines the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107(4). This factor requires this Court to evaluate the economic impacts of the allegedly infringing use upon the copyright owner. See *NXIVM Corp v Ross Inst*, 364 F3d 471 (CA 2, 2004).

Defendant's willful and malicious misappropriation of Plaintiffs' Copyrighted Works for commercial purpose has irreparably damaged a potential market and derivative markets for

Plaintiffs' devotional journal titled "Heart-Storming with the Lord." In three pieces of Copyrighted Works registered as "Heart-storming with the Lord," "Heart-Storming with the Lord" and ""Heart Storming" respectively, Plaintiffs advertise and display the journal. Plaintiffs currently sell the journal online for $12.00. See *Heart-Storming With The Lord*, https://www.lulu.com/shop/elle-christian-and-james-cooley-and-morgan-cooley/heart-storming-with-the-lord/paperback/product-149n7g26.html?page=1&pageSize=4 (2023). In her defamatory Video, Defendant used the Copyrighted Works in a defamatory manner, and such use would certainly deflate the market for Plaintiffs' journal. To state a valid claim for damages, it is sufficient for Plaintiffs to allege market reduction, and do not have to claim market usurpation. *May v Sony Music Entmt*, 399 F Supp 3d 169 (SDNY, 2019).

Plaintiffs' Complaint could have alleged that Defendant's infringement and defamation further destroyed the musical performance and event market. Defendant destroyed that market so that Plaintiffs have lost economic opportunity. Defendant duplicated Plaintiffs' Copyrighted Works for commercial fundraising purposes. The Supreme Court has noted that there is a presumption of market harm "when a commercial use amounts to mere duplication of the entirety of an original." *Campbell v Acuff-Rose Music, Inc*, 510 US 569; 114 S Ct 1164; 127 L Ed 2d 500 (1994) (finding a presumption of market harm applicable where the defendant's commercial use of the infringing photograph was a "duplication of the entirety of an original"). Given the applicability of the presumption and the lack of any countervailing considerations, this Court should find that the final factor favors Plaintiffs. See *McGucken v Newsweek LLC*, 464 F Supp 3d 594 (SDNY, 2020).

The purpose of Defendant's Video was to raise money for a documentary film. Defendant received roughly $32,000 from donors who viewed the Video. Defendant has profited using

Plaintiffs' Copyrighted Works.   Plaintiff is entitled to this revenue as infringer profits.   In addition to damages, Plaintiffs seek injunctive relief enjoining Defendant from re-posting the defamatory and harassing Video and related copyright infringement.   These are all remedies afforded for copyright infringement.

**Plaintiffs, not Defendant, are Entitled to Costs and Attorneys Fees**

It is Plaintiffs who should be entitled to costs and attorneys fees. After Plaintiffs filed their Counter-Complaint alleging defamation, harassment, and invasion of privacy, Defendant took down the GoFundMe page and YouTube video.  If Defendant truly thought there was "fair use" or "*de minimis*" use, why did Defendant take it all down?  If Defendant was making a documentary, why was the infringing Video taken down and the fundraising stopped?  This unquestionably establishes the bad faith and illicit purpose behind Defendant's infringement of the Copyrighted Works.

Defendant profited approximately $32,000 from misappropriation of Plaintiffs' Copyrighted Works. As stated in the Complaint, Defendant's malicious misappropriation has caused Plaintiffs emotional distress and humiliation, and this experience has adversely affected Plaintiffs' lives both psychologically and economically. *See* Complaint ¶ 89. Defendant's Video has subjected Plaintiffs to intimidation and invasion of privacy from Defendant and third parties who reasonably could have been expected to see and act upon the Video. *See* Complaint ¶¶ 90-91.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion must be denied.  If this Court finds that additional specificity or facts are required, Plaintiffs request that they be allowed to cure by way of amendment since amendment of a pleading ordinarily should be freely granted.

Dated: March 8, 2023

Respectfully submitted,
MARK H. ZIETLOW & ASSOCIATES
By: /s/ Mark H. Zietlow_____
Mark H. Zietlow
388 Garden Ave, Ste 140
Holland, MI 49424
(616) 392-4100
Attorneys for Plaintiffs