UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JAMES COOLEY, an individual, and
MORGAN COOLEY, an individual,

      Plaintiffs,

v.

ELIZABETH MARCUS, an individual,

      Defendant.

Case No. 1:23-cv-00086

Hon. Hala Y. Jarbou

---

Mark H. Zietlow (P37022)
**INNOVATIVE LAW GROUP**
Attorney for Plaintiffs
388 Garden Avenue
Suite 140
Holland, MI 49424
(616) 392-4100
mark@innovative.lawyer

Thomas V. Hubbard (P60575)
Amanda P. Narvaes (P74957)
**DREW, COOPER & ANDING, P.C.**
Attorney Defendant
Aldrich Place, Suite 200
80 Ottawa Avenue, N.W.
Grand Rapids, MI 49503
(616) 454-8300
thubbard@dca-lawyers.com
anarvaes@dca-lawyers.com

---

## BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION .............................................................................................. 1

PERTINENT FACTS AND PROCEDURAL HISTORY ................................... 2

STANDARD OF REVIEW ................................................................................ 3

ANALYSIS ......................................................................................................... 4

I.  PLAINTIFFS' COPYRIGHTS FOR "LAUGHTER," "DAY AT THE BEACH"
    AND "THE COOLEYS AND ELLE" ARE INVALID AND CANNOT
    FORM THE BASIS OF AN INFRINGEMENT CLAIM ............................... 4

II.  THE USE OF THE VIDEO CLIPS FROM PLAINTIFFS' VIDEOS
     WAS DE MINIMIS AND THEREFORE CANNOT BE THE BASIS
     FOR A COPYRIGHT INFRINGEMENT CLAIM ...................................... 5

III.  THE USE OF PLAINTIFFS' COPYRIGHTED WORKS WAS FAIR USE ............................... 8

      A.  Purpose and character of the use ................................................. 10

      B.  The nature of the Copyrighted Works
          was more factual than creative ..................................................... 12

      C.  The amount and substantiality of the portion used in
          relation to the Copyrighted Work as a whole ............................. 13

      D.  Effect on the market ..................................................................... 14

IV.  PLAINTIFFS HAVE SUFFERED NO DAMAGES ............................................ 15

      A.  Plaintiffs have suffered no actual damages as a
          result of the alleged infringement ................................................ 15

      B.  There were no "infringer's profits" generated by
          the GoFundMe page ....................................................................... 19

      C.  Any "infringer's profits" must subtract out costs of making
          the Trailer Video ........................................................................... 20

CONCLUSION ................................................................................................... 21

## TABLE OF AUTHORITIES

**CASES**                                                                                                       **PAGE(S)**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258 (2023) ..................10

*Balsley v. LFP, Inc.,* 691 F.3d 747 (6th Cir. 2012)................................................................10, 12

*Bell v. Taylor*, 827 F.3d 699 (7th Cir. 2016)...............................................................................19

*Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006) ..........................................................................10

*Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53 (1884) .................................................4

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) .................................................. *passim*

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................................3

*Data Gen. Corp. v. Grumman Sys. Support Corp.,*36 F.3d 1147 (1st Cir. 1994)..........................17

*In re DCMA Supboena to Reddit, Inc.*, 441 F. Supp. 3d 875 (N.D. Cal. 2020).....................10, 11

*Doe v. Henry Ford Health Sys.*, 865 N.W.2d 915 (Mich. Ct. App. 2014) ..............................17, 18

*ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616 (6th Cir. 2020) ...................................................17

*Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061 (7th Cir. 1994)....................................................5

*Est. of Vane v. The Fair, Inc.*, 849 F.2d 186 (5th Cir. 1988) .......................................................19

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)...........................................8

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985) .....................15

*Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1197 (2021).................................................9

*Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922 (6th Cir. 2003)..................5, 6

*Harper & Row, Publishers v. Nation Enters.*, 471 U.S. 539 (1985).............................................8

*Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34 (S.D.N.Y. 2017)....................................................11

*Hughes v. Benjamin*, 437 F. Supp. 3d 382 (S.D.N.Y. 2020) .......................................................8

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) .....................................................13, 14

*Louisiana Contractors Licensing Service, Inc.v. Am. Contractors Exam Services, Inc.,*
   13 F. Supp. 3d 547 (M.D. La. 2014)................................................................6, 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).....................................4

*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797 (6th Cir. 2000)......................................4

*Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.*, 935 F. Supp. 490 (S.D.N.Y. 1996) ...........10

*Motta v. Samuel Weiser, Inc.*, 768 F.2d 481 (1st Cir. 1985).....................................5

*Multimatic, Inc. v. Faurecia Interior Systems USA, Inc.,*
   358 F. App'x 643 (6th Cir. 2009) ....................................................................18

*Natkin v. Winfrey*, 111 F. Supp. 2d 1003 (N.D. Ill. 2000) .............................................4

*Neal Publications v. F & W Publications, Inc.*, 307 F. Supp. 2d 928 (N.D. Ohio 2004)...............8

*Niemi v. Am. Axle Mfg. & Holding, Inc.,*
   No. 05-74210, 2008 WL 1837253 (E.D. Mich. 2008)......................................19

*Nunez v. Caribbean Intern. News Corp.*, 235 F.3d 18 (1st Cir. 2000) ..........................................12

*Pan v. Kohl's Dep't Stores, Inc.,*
   No. 2:12-CV-1063, 2016 WL 1270665 (S.D. Ohio Mar. 31, 2016)...................................5

*Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004) ............................16, 18, 19

*Quinn v. City of Detroit*, 23 F. Supp. 2d 741 (E.D. Mich. 2005)............................................15, 16

*Sandoval v. New Line Cinema Corp.*, 147 F.3d 215 (2d Cir. 1998) ...................................5, 6

*SOFA Ent., Inc. v. Dodger Productions, Inc.*, 709 F.3d 1273 (9th Cir. 2013) .......................10, 15

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) .....................................14

*Stevenson v. Brotherhoods Mut. Ben.*, 19 N.W.2d 494 (Mich. 1945) ...........................................18

*Stewart v. Abend*, 495 U.S. 207 (1990).....................................................................12

*Van Buren Charter Township*, 904 N.W.2d 192 (Mich. Ct. App. 2017)................................17, 18

*Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998) ......................................3

## STATUTES

17 U.S.C.A. § 101(1) ..................................................................................4

17 U.S.C.A. § 101(2) ..................................................................................4

17 U.S.C.A. § 107 .......................................................................................9

17 U.S.C.A. § 107(2) ................................................................................12

17 U.S.C.A. § 201(a) ..................................................................................4

17 U.S.C.A. § 201(b) ..................................................................................4

17 U.S.C.A. § 201(c) ..................................................................................4

17 U.S.C.A. § 412 .......................................................................................3

17 U.S.C.A. § 504 .......................................................................................3

17 U.S.C.A. § 504(b) ....................................................................15, 18, 19

17 U.S.C.A. § 505 .......................................................................................3

## OTHER AUTHORITY

Fed. R. Civ. P. 12(b)(6) ..............................................................................5

Fed. R. Civ. P. 56 ...............................................................................passim

Fed. R. Civ. P. 56(a) ..................................................................................3

Fed. R. Civ. P. 56(c) ..................................................................................3

Fed. R. Civ. P. 56(c)(1) ..............................................................................3

Black's Dictionary, 10th ed. 2014 ............................................................20

## INTRODUCTION

Plaintiffs James Cooley and Morgan Cooley ("the Cooleys" or "Plaintiffs") cannot prevail on their claims for copyright infringement for three reasons. First, Plaintiffs' copyrights for three of the four photographs at issue ("Laughter," "Day At The Beach" and "The Cooleys and Elle") are invalid because the Plaintiffs were admittedly not the photographers, and admittedly made no copyrightable contribution to the works. Thus, they have no standing to bring an infringement claim for the use of those photographs. Second, the use by Defendant Elizabeth Marcus ("Marcus" or "Defendant") of the one remaining photograph and two video clips in question was, as a matter of law, "fair use" under the Copyright Act.[1] Specifically, the reason the Copyrighted Works were used was to provide the public with recent images of Marcus's sister, Elle Roskamp, so that Elle and her family might be reunited, and to educate the public about the circumstances of Elle's disappearance so that other families might avoid a family separation similar to the one that Marcus and her parents suffered. In light of how Plaintiffs admittedly used the Copyrighted Works, Marcus' use constituted "fair use" under the Act, and Plaintiff has presented no evidence raising a genuine issue of material fact otherwise. Third, Marcus is entitled to summary judgment because Plaintiffs have presented no evidence that they suffered actual damages from the use of the Copyrighted Works, that the donations raised by Marcus' GoFundMe campaign constituted "infringer's profits" under the Act, or that there is a causal connection between the alleged "infringer's profits" and the use of the Copyrighted Works.

For the reasons that follow, Marcus respectfully requests that this Court dismiss Plaintiffs' Copyright claim in its entirety.

---

[1] For ease of reference, the four photographs and two video clips at issue are collectively referred to as the "Copyrighted Works," despite the fact that the copyrights for three of the four photographs at issue are invalid as a matter of law. (*See* Ex. 1, disk of original "Copyrighted Works.")

## PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiffs allege that a promotional video posted on Marcus' GoFundMe campaign in June 2021 constitutes copyright infringement because the video made use of the Copyrighted Works. (ECF 1, PageID.5, ¶¶ 35-36). At the time Marcus posted the video, Plaintiffs had not yet applied for copyright registrations. In fact, Plaintiffs did not apply for copyright registrations until November 29, 2022, over a year later, and only after Marcus and her parents had sued Plaintiffs in a separate, state court case relating to the disappearance of Marcus' sister, Elle. (ECF No. 1, PageID.14-31; *see also* ECF No. 9-2, *Roskamp, et al v. Grace Christian University, et al*, Kent County Circuit Court Case No. 22-07446-CZ, filed August 2022.)

Marcus's GoFundMe campaign also related to Elle's disappearance and its initial goal was to raise $170,000 to cover the cost of making a full-length documentary film about the search for Elle. (Ex. 2, Declaration of E. Marcus, ¶¶ 2-4.)[2] The GoFundMe campaign webpage hyperlinked to a 2 minute and 30 second promotional Trailer Video that discussed Elle's disappearance from her family's perspective. (*See* ECF No. 9-6, "Trailer Video," previously submitted on disk to the Court.) The Trailer Video included four photographs and two short clips of longer videos that the Cooleys allegedly created and posted to their personal Facebook profiles. (ECF No. 27, PageID.245-247; *see also* Ex. 3, Answers to First Interrogatories, Response to Interrogatory No. 1.) Plaintiffs alleged in response to Interrogatories that they created the Copyrighted Works for marketing purposes. (*Id.*, "Response from RA # 8.") All of the photos or video clips used in the Trailer Video included an image of Elle. (Ex. 2, Declaration of E. Marcus, ¶ 10.)

---

[2] *See also*  https://web.archive.org/web/20210621185434/http://www.gofundme.com/f/where-is-elle, last visited on February 16, 2023. The GoFundMe webpage is no longer active.

On February 22, 2023, Marcus filed a Motion to Dismiss this lawsuit pursuant to Fed. R. Civ. P. 12(b)(6). (ECF Nos. 8, 9.) In its Order granting in part and denying in part that Motion, this Court held, on July 24, 2023, that it could not decide "based on the complaint alone" whether Marcus's use of the Copyrighted Works was "fair use" under the Act. (ECF No. 30, PageID.274, 275.) The Court did hold, however, that Plaintiffs were not entitled to statutory damages and attorney fees under 17 U.S.C.A. § 504 or 17 U.S.C.A. § 505, because their copyright registrations were not filed within the deadlines required by Section 412 of the Copyright Act. (ECF No. 30, PageID.275-276.) The parties subsequently engaged in written discovery.[3] The discovery deadline has now passed.

## STANDARD OF REVIEW

Judgment under Rule 56 "is appropriate when there are no genuine issues of material fact for trial, and the moving party is entitled to judgment as a matter of law." *Wilkins v. Baptist Healthcare System, Inc*., 150 F.3d 609, 613 (6th Cir. 1998), citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(a). The movant must support its motion either by "citing to particular parts of materials in the record" or by showing "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.v. Catrett*, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c)(1). When the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" summary judgment is warranted. Fed. R. Civ. P. 56(c). Once a moving party meets this burden, the nonmoving party "must do more than simply show that there is some metaphysical

---

[3] Plaintiffs did not serve any discovery. Defendants sent Plaintiffs three sets of written discovery.

doubt as to the material facts…[it] must come forward with facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586-587 (citations omitted).

Ultimately, a Rule 56 motion provides a pretrial avenue for a court to look beyond the pleadings and into the evidence, to determine whether there is a viable issue for trial. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587 (citations omitted). Although facts are drawn from submissions made by both parties, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

## ANALYSIS

I.   **PLAINTIFFS' COPYRIGHTS FOR "LAUGHTER," "DAY AT THE BEACH" AND "THE COOLEYS AND ELLE" ARE INVALID AND CANNOT FORM THE BASIS OF AN INFRINGEMENT CLAIM.**

Plaintiffs have admitted that neither of them took the photographs titled "Laughter," "Day At The Beach" and "The Cooleys and Elle."[4] Generally, the photographer is the "author" of a photograph for purposes of copyright law. 17 U.S.C.A. § 201(a); *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 55 (1884). There are two exceptions to this authorship rule: the "work for hire" exception and the "joint work" exception. 17 U.S.C.A. § 201(b), (c); *Natkin v. Winfrey*, 111 F. Supp. 2d 1003, 1008 (N.D. Ill. 2000). Neither of those exceptions apply here. First, Plaintiffs' have made no claim and produced no evidence that any of those three photographs were "work for hire" as that term is defined by the Act. 17 U.S.C.A. § 101(1), (2). Second, Plaintiffs have admitted they did not edit or alter the photographs in any way (Ex. 4, Response to Interrogatory No. 3.) In order for the "joint work" exception to apply, the contributor must have added something to the

_____

[4] Plaintiffs first stated that "Laughter" was taken by an unknown photographer, but then later stated it was taken by a person named "Sharon Shah." (Ex. 4, Answers to Third Discovery Requests, Response to Interrogatory 2.) Plaintiffs have admitted that both "Day At The Beach" and "The Cooleys and Elle" were taken by an unknown photographer. (*Id.*)

photograph that "represents original expression that could stand on its own as the subject matter of copyright." *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1070 (7th Cir. 1994). Plaintiffs have admitted they did not contribute any "original expression that could stand on its own as the subject matter of copyright" to either "Laughter," "Day At The Beach" or "The Cooleys And Elle." (Ex. 4, Response to Interrogatory No. 3.) Therefore, their claimed copyrights of those works are invalid, which means they lack standing to bring infringement claims against Marcus for the use of those works. *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 483–84 (1st Cir. 1985) (explaining that if a plaintiff is not the author of the work, they generally do not have standing to assert copyright infringement); *see also Pan v. Kohl's Dep't Stores, Inc.*, No. 2:12-CV-1063, 2016 WL 1270665, at *5 (S.D. Ohio Mar. 31, 2016) ("If Plaintiff is not the author of the work, Plaintiff has no valid copyright. If Plaintiff has no valid copyright, Plaintiff has no standing to sue.").

## II.   THE USE OF THE VIDEO CLIPS FROM PLAINTIFFS' VIDEOS WAS DE MINIMIS AND THEREFORE CANNOT BE THE BASIS FOR A COPYRIGHT INFRINGEMENT CLAIM.

"Where the unauthorized use of a copyrighted work is de minimis, no cause of action will lie for copyright infringement, and determination of a fair use claim is unnecessary." *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998). Here, the alleged use of Plaintiffs' copyrighted videos was de minimis.[5] (ECF No. 1, PageID.20-22, 26-28, Compl., Exs. 3 and 5.) To establish that the alleged infringement of a copyrighted work is de minimis, and therefore not actionable, "the alleged infringer must demonstrate that the copying of the protected materials is so trivial 'as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying.'" *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*,

_____

[5] Marcus raised the argument that her alleged use of the Copyrighted Works was de minimis in her initial motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). She raises this argument again under Rule 56 only as to the copyrighted videos at issue based on information disclosed during discovery.

345 F.3d 922, 924 (6th Cir. 2003), quoting *Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 77 (2d Cir. 1997). "[A]n inquiry into the substantial similarity between a copyrighted work and the allegedly infringing work must be made on a case-by-case basis, as there are no bright-line rules for what constitutes substantial similarity." *Sandoval v. New Line Cinema Corp.*, at 217.

In *Louisiana Contractors Licensing Service, Inc.v. Am. Contractors Exam Services, Inc.*, 13 F. Supp. 3d 547, 552-554 (M.D. La. 2014), *aff'd*, 594 F. App'x 243 (5th Cir. 2015), the court found that verbatim copying of 14 questions of a 1,083 question, copyrighted sample exam was de minimis. The Court explained that even verbatim copying could be de minimis where the copying goes to trivial elements of the original work. The Court explained:

> Fragmented literal similarity exists where the defendant copies a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure. Because the degree of similarity is high in such cases, **the dispositive question is whether the copying goes to trivial or substantial elements.** Substantiality is measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole.

*Louisiana Contractors Licensing Serv., Inc.* at 553, quoting *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) (emphasis added). Here, the copying of miniscule portions of Plaintiffs' videos went to trivial elements of the overall works, as described below.

The first video clip that Plaintiffs allege constituted copyright infringement appears in the Trailer Video from the 1:15 mark to 1:18 mark (**three seconds**). (ECF No. 9-6, Trailer Video.) That video clip features Plaintiff Morgan Cooley and Elle, both shown behind a keyboard. No sound from the original video is used. When a copy of the original digital video file was requested in the course of discovery, Plaintiffs produced a copy stating that it was a "Live FB Video" with a date of "9.30.2019." (Ex. 1, disk of "Copyrighted Works.") This date matches the copyright

registration of the "Reflections and Worship" motion picture registered by co-authors Morgan and James Cooley. (ECF No. 1, PageID.27-28, Compl. Ex. 5.) That motion picture is forty-four minutes and twenty seconds long. (Ex. 1, disk of "Copyrighted Works.") The Trailer Video used only the first three seconds of that motion picture, which shows Morgan taking a drink from a cup with a straw as Elle sits in the background holding Plaintiffs' infant son. The remaining forty-four minutes and seventeen seconds of the original video features James, Morgan, and Elle singing and engaging in religious fellowship. (*Id.*) The first three seconds of the motion picture that were used in the Trailer Video, without audio, were a trivial aspect of the entire original video.  No reasonable jury could find otherwise. Those three seconds did not portray the Plaintiffs and Elle singing and engaging in religious worship, which was the focus of the original video. Further, the three seconds used contained no audio from the original work. Therefore, the use of the first three seconds of the Plaintiffs' work "Reflections and Worship" was de minimis.

The second video clip that Plaintiffs say Defendant infringed appears in the Trailer Video from 1:34 to 1:38 (**four seconds**). (ECF No. 9-6.) Plaintiffs copyrighted and titled the original video "Heart-Storming with the Lord." (ECF No. 1, PageID.20-22, Compl. Ex. 3.) The original video, which was produced by Plaintiffs in discovery, is seventeen minutes and thirty-eight seconds long. (Ex. 1, disk of "Copyrighted Works.") It features James, Morgan, and Elle (holding the Plaintiffs' infant son), and the main portion of the video features James and Morgan discussing their religious worship practices, and how to use the prayer journal they were creating. (*Id.*) The focus of the video was on what James and Morgan were saying, as nothing happens in the video other than slight changes in posture and expression of each person included in the video. As noted above, a four-second clip of this video is used in the Trailer Video, and no sound from the original video is used. The Trailer Video's use of a four-second clip of "Heart-Storming with the Lord"

without any audio—which was the essential part of the original work—was trivial and de minimis because it does not appropriate the work's overall essence or structure. *Louisiana Contractors Licensing Service, Inc.v. Am. Contractors Exam Services, Inc.,* 13 F. Supp. 3d 547, 552-554 (M.D. La. 2014), *aff'd*, 594 F. App'x 243 (5th Cir. 2015); *see also Neal Publications v. F & W Publications, Inc.*, 307 F. Supp. 2d 928, 931 (N.D. Ohio 2004) ("To be actionable, copying…must involve copying of more than a small and insignificant portion of the plaintiff's work.").

For the reasons stated above, the use of the Plaintiff's copyrighted videos was de minimis and the copyright claims associated with those two videos should be dismissed pursuant to Fed. R. Civ. P. 56.

## III.   THE USE OF PLAINTIFFS' COPYRIGHTED WORKS WAS FAIR USE.

"To establish copyright infringement, a copyright owner must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). A defendant can defeat a showing of infringement by proving that the doctrine of fair use permits his or her use of the copyright owner's work. *Hughes v. Benjamin*, 437 F. Supp. 3d 382, 389 (S.D.N.Y. 2020) (citations omitted). Whether the "fair use" defense applies to copyright infringement claims is a mixed question of law and fact. *Harper & Row, Publishers v. Nation Enters.*, 471 U.S. 539, 560 (1985). When a court finds "facts sufficient to evaluate each of the statutory factors" the court may make the "fair use" determination as a matter of law. *Id.* Here, the allegedly infringing use was for informational purposes, comment, and criticism, all of which qualify as fair use.

The Copyrighted Works were posted to the Plaintiffs' Facebook pages without any copyright marking, attribution, or limitations statement. (Ex. 3, Response to Interrogatory No. 5.) Defendant's use of the Copyrighted Works in the Trailer Video was to provide the public with

recent images of her sister, Elle, for the purposes of: (1) aiding in finding Elle; and (2) informing and educating the public about the circumstances surrounding Elle's disappearance. (Ex. 2, Declaration of E. Marcus, ¶¶ 3, 10, 12-13.) Section 107 of the Copyright Act provides that "the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords…for purposes such as **criticism, comment, news reporting,** teaching…is not an infringement of copyright." 17 U.S.C.A. § 107 (emphasis added). The examples of fair use in the statute are "illustrative and not limitative." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) ("*Campbell*"). When a use is fair, the demands of the copyright owner are irrelevant. *Campbell*, n.18 ("If the use is otherwise fair, then no permission need be sought or granted.").

The doctrine of "fair use" shields from infringement particular uses of a copyrighted work. *Campbell*, at 576–77; 17 U.S.C.A § 107. The statute sets out four factors for courts to weigh in determining whether the use made of a work in any particular case is a fair use:

> 1. the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> 2. the nature of the copyrighted work;
> 3. the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> 4. the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C.A § 107. These four factors "set forth general principles, the application of which requires judicial balancing, depending upon relevant circumstances[.]" *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1197 (2021). "All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, at 578. When these factors are applied to the facts at issue, it is clear that there is no genuine issue of material fact as to whether Marcus' use of the Copyrighted Works in the Trailer Video was a fair use, and thus Plaintiff's claims for infringement should be dismissed pursuant to Rule 56.

9

### A.      Purpose and character of the use.

The first factor "asks 'whether and to what extent' the use at issue has a purpose or character different from the original." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1275 (2023), quoting *Campbell*, 510 U.S. at 579. The inquiry goes beyond whether the photographs or videos were altered and instead examines whether the use of the Copyrighted Works, in the specific context, was transformative. Unlicensed use of copyrighted material has qualified as fair use where the infringing work has a different purpose than the original work, is used for purposes of criticism, or is used to inform the public of certain events. *See SOFA Ent., Inc. v. Dodger Productions, Inc.*, 709 F.3d 1273 (9th Cir. 2013) (usage of short clip from *The Ed Sullivan Show* as a "biographical anchor" in a biopic about the Four Seasons band was "fair use"); *In re DCMA Supboena to Reddit, Inc.*, 441 F. Supp. 3d 875, 884 (N.D. Cal. 2020) (usage of copyrighted ad and chart to criticize organization and spark discussion about it considered "transformative"); *Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996) ("There is a public interest in receiving information concerning the world in which we live…too narrow a view of the fair use defense will deprive the public of significant information."). Notably, "physical changes are not required for a new use to be transformative." *In re DCMA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d at 884. However, to qualify as a fair use, a new work generally must alter the original with "new expression, meaning, or message." *Campbell*, 510 U.S. at 579. "When, as here, the copyrighted work is used as 'raw material,' in the furtherance of distinct creative or communicative objectives, the use is transformative." *Blanch v. Koons*, 467 F.3d 244, 253 (2d Cir. 2006) (internal citations omitted).

The first factor also examines whether the use of the copyrighted work was for commercial or noncommercial purposes. *Balsley v. LFP, Inc.,* 691 F.3d 747, 758 (6th Cir. 2012). The

significance of commercialism on fair use decreases "the more transformative the work" is. *Campbell*, 510 U.S. at 579. Plaintiffs have not alleged or provided any evidence that they ever sold or licensed the use of any of the Copyrighted Works. (Ex. 3, Response to Interrogatory No. 1, "Response from RA # 8.") According to Plaintiffs' responses to Interrogatories, the purpose of creating and posting the Copyrighted Works was to promote Plaintiffs' alleged "brand." (*Id.*)

In contrast, Defendant's primary purpose for including the Copyrighted Works in the Trailer Video was to assist in finding her sister Elle, who lived with Plaintiffs for over a year before her disappearance. (Ex. 2, Dec. of E. Marcus, ¶¶ 10, 12.) The secondary purposes were to criticize Grace Christian University, and to educate and inform the public about how Elle became estranged from her family, in the hopes of preventing something similar from happening to other families. (*Id.*, ¶ 13.) More specifically, the Trailer Video attempted to alert the public to recent likenesses of Elle Roskamp and who she was recently with (Plaintiffs) so she could be located. (*Id.*, ¶¶ 10, 12; *see also* ECF No. 9-6.) Secondarily, the Trailer Video criticized Grace Christian University's failure to oversee Elle Roskamp's "internship" with the Plaintiffs. (Ex. 2, Dec. of E. Marcus, ¶ 13.) Each of the Copyrighted Works constituted an extremely small portion of the Trailer Video.[6]

All of the Copyrighted Works at issue in this case included an image of Elle, and by being included in the Trailer Video, transformed the purpose and meaning of the Copyrighted Works. The Copyrighted Works were transformed in the Trailer Video by being part of a broader work that commented on Elle's disappearance and criticized Grace Christian University. Such incorporation of the Copyrighted Works into other material was, itself, transformative. *See, e.g., Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 42 (S.D.N.Y. 2017) (copying of a large portion of

---

[6] Each of the Copyrighted Works was featured for 4 seconds or less in the Trailer Video. 4 seconds equates to 2.6% of the Trailer Video.

copyrighted video justified as fair use where purpose of copying was comment and criticism); *In re DCMA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 884 (N.D. Cal. 2020) (usage of copyrighted ad and chart to criticize organization and spark discussion considered "transformative"). And while the Trailer Video was posted to a GoFundMe page that was seeking donations for the creation of a full-length documentary, the donations were just that: donations. (Ex. 2, Dec. of E. Marcus, ¶¶ 3, 4, 6.) Defendant was not attempting to "sell" the Trailer Video or the Copyrighted Works within it. Defendant's transformative use of the Copyrighted Works weighs in favor of a finding of fair use.

**B.    The nature of the Copyrighted Works was more factual than creative.**

The second factor in a fair use analysis focuses on "nature of the copyrighted work." 17 U.S.C.A. § 107(2). There are two aspects to this factor:

> Courts have generally considered two aspects of the work in evaluating this factor: first, the extent to which it is a creative work enjoying broader copyright protection as opposed to a factual work requiring broader dissemination, *see Harper & Row*, 471 U.S. at 563–64, 105 S. Ct. 2218, and second, whether it is unpublished, in which case the right of first publication is implicated, *see id.* at 564, 105 S. Ct. 2218.

*Nunez v. Caribbean Intern. News Corp*., 235 F.3d 18, 23 (1st Cir. 2000). *See also Balsley*, 69 F.3d at 760. Here, the Cooleys posted the Copyrighted Works to Facebook and YouTube, so the second aspect, right of first publication, is not implicated. The first aspect, whether the nature of the works was more factual than creative, weighs in favor of a finding of fair use.

Review of the Copyrighted Works makes clear that they were factual works rather than fictional works, which makes them less important to protect than the creative works at the core of copyright protection. *Campbell*, 510 U.S. at 586; *Stewart v. Abend*, 495 U.S. 207, 237 (1990) ("In general, fair use is more likely to be found in factual works than in fictional works."). First, the

only photograph at issue over which Plaintiffs have an arguably valid copyright is titled "Heart Storming," which was allegedly taken by Morgan Cooley, who took the photograph by extending her camera phone with her arm to take a "selfie" of herself, James Cooley, and Elle, who was holding the Cooleys' infant son. (ECF No. 9-6, Trailer Video at 1:05 to 1:08; *see also* Ex. 1 disk with "Copyrighted Works.") "Heart Storming" was clearly taken as a factual, "in the moment" photograph rather than being creatively planned. Again, Plaintiffs expressly admitted that they did not edit or alter any of the photographs or videos at issue, including "Heart Storming". (Ex. 4, Response to Interrogatory No. 3.)

Because the Copyrighted Works were candid and factual in nature, they were more factual than creative, and this factor weighs in favor of a finding of fair use.

**C.    The amount and substantiality of the portion used in relation to the Copyrighted Work as a whole.**

Two of the Copyrighted Works—Reflections and Worship and Heart Storming With The Lord—were *significantly* altered for use in the Trailer Video. The two video clips used in the Trailer Video from these works were much, much shorter than the works themselves. (Ex. 3, Response to Interrogatory No. 1, and compare ECF No. 9-6, Trailer Video, to the original videos provided at Ex. 1.) The Cooleys' two videos were 44 minutes long (Reflections and Worship) and over 17 minutes long (Heart-Storming With The Lord). The video clips used in the Trailer Video from these longer videos were, at most, 4 *seconds* long and did not include any sound from the videos. Thus, this factor weighs in favor of a finding of fair use of the copyrighted videos.

As for the photographs, again, Plaintiff have an arguably valid copyright over only one of them—the "selfie" titled "Heart Storming." That photo appears for only 3 seconds in the 2 minute and 30-second-long Trailer Video. Generally speaking, copying of an entire work weighs against a finding of fair use. *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003). However, if the

13

user of the copyrighted works "only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." *Id.*, 821. Here, Defendant needed the photograph to share a recent image of Elle, who had been living with the Cooleys for a year before her disappearance. (Ex. 2, Dec. of E. Marcus, ¶ 10.) The hope was that someone who recognized her would come forward with information about her whereabouts. (*Id.*, ¶ 12.) Although the majority of the photograph was shown in the Trailer Video, it was reasonable to do so in light of Defendant's fair use of the image. Given the purpose of the use, this factor should not weigh against a finding of fair use as to the photograph.

### D.     Effect on the market.

Defendant's use of the Copyrighted Works did not cause any harm to the potential market for or value of the original works, which Plaintiffs have admitted were not being sold or licensed. (Ex. 3, Response to Interrogatory No. 1, "Response from RA # 8.") In evaluating this factor, courts consider whether the alleged infringer caused market harm to the copyright holder **for the copyrighted works**, and "also whether unrestricted and widespread conduct of the sort engaged in by the defendant…would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590. Notably for this case, a "use that has no demonstrable effect upon the potential market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984).

Plaintiffs have argued in response to discovery requests that the use of the Copyrighted Works was harmful to them not because they were unlawfully copied, but because the Roskamp and Elizabeth implied, during the Trailer Video, that the Cooleys had been involved in Elle's disappearance. (Ex. 3, Response to Interrogatory No. 3.) But the words used by the Roskamps and

Elizabeth during the Trailer Video did not affect any market for the Copyrighted Works because there admittedly **was no market** for the Copyrighted Works. The Plaintiffs admitted they were not being sold or licensed to anyone for use: "Although these specific works were not sold directly, they played a significant role in contributing to the James and Morgan, Burn 24/7 West Michigan brand…" (Ex. 3, Response to Interrogatory No. 1, "Response from RA # 8.") And in any event, the words in the video involved criticism, or commentary, which courts have held has no effect on the market for the original work. *See SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013). The fourth factor, like the first and second factors, should be weighed in favor of a finding of fair use.

Under the circumstances, no reasonable jury could find against Marcus on the first, second, or fourth fair use factors. Because the four factors favor Marcus' defense of fair use, the Court should find that, as a matter of law, the use of the Copyrighted Works in the Trailer Video was a fair use under the Act.

## IV. PLAINTIFFS HAVE SUFFERED NO DAMAGES.

### A. Plaintiffs have suffered no actual damages as a result of the alleged infringement.

Where statutory damages are unavailable, as this Court has already ordered (ECF No. 31), then a "copyright owner is entitled to recover the actual damages suffered by him or her **as a result of the infringement**." 17 U.S.C.A. § 504(b) (emphasis added). "Actual damages" are generally considered "the amount by which the market value of the copyrighted work has been injured or destroyed due to the infringement." *Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 750 (E.D. Mich. 2005), citing *In Design v. K–Mart Apparel Corp.*, 13 F.3d 559, 563 (2d Cir. 1994); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985). "Most commonly under this measure of damages, a prevailing plaintiff receives as actual damages the profits that

plaintiff would have earned from the infringed work *but for* defendant's infringement." *Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 750 (E.D. Mich. 1998) (emphasis added). The Plaintiffs bear the burden to show "a causal link between the infringement and the monetary remedy sought." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004).

In responses to Interrogatories, Plaintiffs claim they suffered reputational injury due to statements in the Trailer Video. In their discovery responses, they asserted that Defendant used the Copyrighted Works to depict Plaintiffs "in a negative or derogatory manner" and "in a misleading or defamatory context," which created "a false or damaging narrative" about the Plaintiffs. (Ex. 3, Response to Interrogatory No. 3.) Later, in response to Defendant's Third Set of Discovery Requests, Plaintiffs alleged that the "copyright infringement" reduced their ability to: (1) sell their prayer journal titled Heart Storming With The Lord[7] and (2) sell their services as a music teacher and worship leader. (Ex. 4, Response to Interrogatory No. 6.)

Importantly, the prayer journal, the music lessons, and the speaking engagements are **not** the Copyrighted Works at issue here. And, as admitted by Plaintiffs in response to interrogatories, Plaintiffs were **not** selling or licensing the Copyrighted Works. (Ex. 3, Response to Interrogatory No. 1, "Response from RA # 8.") So, again, there **was no market** for the Copyrighted Works. Plaintiffs claim, instead, that they lost sales of **other** products and business opportunities because the Trailer Video allegedly painted them in a bad light. But even if true, those alleged damages are not recoverable under a copyright claim because they are not "profits that plaintiff *would have earned from the infringed work* but for defendant's infringement." *Quinn*, 23 F. Supp. 2d at 750 (emphasis added). As noted above, actual damages are generally "calculated with reference to the

---

[7]https://www.lulu.com/shop/morgan-cooley-and-james-cooley-and-elle-christian/heart-storming-with-the-lord/paperback/product-24344850.html?page=1&pageSize=4, last visited Oct. 30, 2023.

loss in the fair market value of the copyright, often measured by the profits lost as a result of the infringement" and a "plaintiff seeking actual damages must prove the existence of a causal connection between the . . . alleged infringement and some loss of anticipated revenue." *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 632 (6th Cir. 2020) (inner citations and quotation marks omitted). Here, Plaintiffs cannot prove a loss in the fair market value of their Copyrighted Works because they were not selling the Copyrighted Works. And, critically, Plaintiffs' alleged loss of other business opportunities is not related in any way to the fair market value of the Copyrighted Works, nor is it causally connected to the alleged infringement of the Copyrighted Works. Plaintiffs bear the burden of establishing that causal connection in order to maintain an infringement claim. *Id.*; *see also Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1170 (1st Cir. 1994) ("The plaintiff bears the burden of proving that the infringement was the cause of its loss of revenue."). In sum, Plaintiffs have not shown recoverable actual damages resulting from the alleged infringement. Thus, their claim for actual damages should be dismissed.

Furthermore, the damages sought by the Cooleys for an alleged decrease in prayer journal sales, teaching music lessons, and speaking engagements, are wildly speculative. A party may not recover damages that are "conjectural or speculative in their nature, dependent upon the chances of business or other contingencies." *Van Buren Charter Township*, 904 N.W.2d 192, 200 (Mich. Ct. App. 2017). Even though Plaintiffs earned only $151.50 from online sales of their prayer journal titled "Heart Storming With the Lord" between August 20, 2019, and October 1, 2021, according to a self-created document produced by them in discovery (Ex. 5, spreadsheet "Heart Storming With The Lord Q8"), they projected that their "goal" earnings from this prayer journal were **$432,000** in "Year One" (Ex. 6, "Projected Income Statement – Year One"). That projection is frankly ridiculous in addition to being purely speculative. *See Doe v. Henry Ford Health Sys.*,

865 N.W.2d 915, 922 (Mich. Ct. App. 2014) (Damages are speculative if they "depend entirely on the occurrence of multiple contingencies which might or might not occur at some point in the future."); *Stevenson v. Brotherhoods Mut. Ben.*, 19 N.W.2d 494, 498 (Mich. 1945) (Where profits are by "their nature contingent on opportunity, successful operation, and other uncertain happenings, courts have been loath to allow them to be considered as elements of damages."). Plaintiffs also offer the pure speculation that, due to the infringement, Morgan lost 2 ½ years of music teaching business worth $52,536.26.[8] (Ex. 4, Responses to Interrogatory No. 6.) That self-serving and entirely unsupported estimate is not sufficient to support a recovery of actual damages. *Van Buren Charter Township*, 904 N.W.2d 192, 200 (Mich. Ct. App. 2017) ("damages must not be conjectural or speculative in their nature, or dependent upon the chances of business or other contingencies…"); *Multimatic, Inc. v. Faurecia Interior Systems USA, Inc.*, 358 F. App'x 643, 654 (6th Cir. 2009) ("The district court hit the nail on the head when it characterized this ten-year prediction about the fortunes of the American automotive industry as utterly speculative."). Finally, Plaintiffs speculate that Burn 24/7 (who is not a party to this litigation) lost somewhere between $135,014 to $494,400 annually, with $60,000 of this being a salary for James Cooley. (Ex. 4, Responses to Interrogatory No. 7.) Again, these speculative and unsupported calculations do not come close to meeting the requirements for recovery of actual damages. 17 U.S.C.A. § 504(b); *Van Buren Charter Township*, 904 N.W.2d at 200; *Stevenson v. Brotherhoods Mut. Ben.*, 19 N.W.2d at 498; *see also Polar Bear Prods., Inc. v. Timex Corp.*, at 709–10 (copyright infringer's failure to pay a license fee for use of copyrighted work not causally linked to plaintiff start-up company's inability to put 10,000 copies of a new work on the market).

---

[8] Plaintiffs inexplicably used gross income to calculate these alleged damages; Plaintiffs' own document states that "Music with Morgan" had a net profit of only $12,005 per year. (Ex. 7.)

In sum, the damages alleged by the Plaintiffs are speculative at best, are not causally connected to the alleged infringement, and do not evidence any loss in fair market value for the Copyrighted Works themselves. This Court should, accordingly, dismiss the Plaintiffs' claims for actual damages arising from the alleged copyright infringement.

### B.    There were no "infringer's profits" generated by the GoFundMe page.

17 U.S.C.A. § 504(b) entitles a copyright owner to "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." The statute goes on to explain that "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C.A. § 504(b). Courts have construed this section to mean that the plaintiff must first present the gross revenues earned by the infringer due to the infringement. Only then is the defendant required to present defendant's deductible expenses and show how defendant's work earned profit from factors other than the copyrighted work. *Est. of Vane v. The Fair, Inc.*, 849 F.2d 186, 188 (5th Cir. 1988) (after the copyright holder presents evidence of gross revenues attributable to infringement, "the infringer must prove his deductible expenses and must show which elements of profit are attributable to sources other than the copyrighted work"). Courts have construed the term "gross revenue" under the statute to mean gross revenue that is reasonably related to the infringement. *Niemi v. Am. Axle Mfg. & Holding, Inc.*, No. 05-74210, 2008 WL 1837253, at *4 (E.D. Mich. 2008), citing *Davis v. Gap, Inc.* 246 F.3d 152, 160 (2d Cir. 2001). That is, "in establishing the infringer's profits…the copyright claimant must first show a causal nexus between the infringement and the gross revenue." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004); *see also Bell v. Taylor*, 827 F.3d 699, 710 (7th Cir. 2016).

Here, Plaintiffs have failed to show the required causal connection between the infringement and the alleged "gross profits." Nor could they do so.  No reasonable jury could find that the donors donated to the GoFundMe campaign because it used the Copyrighted Works.  That premise is facially absurd. The donations were sought and provided to support Marcus and the Roskamps in their search for Elle. (Ex. 2, Dec. of E. Marcus, ¶¶ 6-8, 12.) The purpose of the fundraiser was to raise money to make a full-length feature film about Elle's disappearance. (*Id.*) Furthermore, the donations, by definition, cannot be "profits." Black's Dictionary, 10th ed. 2014, defining "profit" as "The excess of revenues over expenditures *in a business transaction*." (Emphasis added). The GoFundMe campaign was not a business transaction. Defendant and her parents gave nothing to the people who donated in exchange for their donations. (Ex. 2, Dec. of E. Marcus, ¶ 6.) The amounts donated were simply not "profits."

## C. Any "infringer's profits" must subtract out costs of making the Trailer Video.

Assuming, *arguendo*, that the donations were attributable to the Copyrighted Works (they are not), and that the donations were "infringer's profits" (they were not), the amount of "infringer's profits" is not equal to the total amount of the GoFundMe campaign donations, which totaled $32,820.00. The cost of making the Trailer Video was $19,293.00. (Ex. 2, Dec. of E. Marcus, ¶ 11; *see also* Ex. 8, Storytelling Pictures invoices.) In addition, GoFundMe took slightly over 2.9% of the donations as its fee.[9] In the event this Court finds the Cooleys are entitled to "infringer's profits," it should also find as a matter of law that the cost of making the Trailer Video and the cost of the GoFundMe campaign must be subtracted from the total amount raised by the GoFundMe campaign. Defendant therefore requests—in the alternative—that this Court find, as a matter of law, that Defendant's deductible expenses were $20,244.78.

---

[9] https://www.gofundme.com/c/pricing, last visited Oct. 30, 2023.

Furthermore, as explained above, Defendant is allowed to show which elements of the allegedly infringing work are **not** attributable to Plaintiffs' Copyrighted Works.  Excluding the three photographic works that the Cooleys did not author, only 11 seconds in a 2 minute and 30 second Trailer Video was "attributable" to Plaintiffs' valid, Copyrighted Works for which they alleged copyright infringement. That is, only 7% of the Trailer Video consists of allegedly valid Copyrighted Works for which Plaintiffs have brought a claim. If this Court finds Plaintiffs are entitled to any "infringer's profits," it should also hold their damages are limited to—at best—7% of the "profits" earned from the GoFundMe campaign.

## **CONCLUSION**

For the reasons discussed above, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint for copyright infringement pursuant to Fed. R. Civ. P. 56.

Respectfully submitted,

Dated:  October 31, 2023

/s/Thomas V. Hubbard
Thomas V. Hubbard (P60575)
Amanda P. Narvaes (P74957)
**DREW, COOPER & ANDING, P.C.**
Attorneys for Plaintiff
80 Ottawa Avenue NW
Aldrich Place, Suite 200
Grand Rapids, MI 49503
(616) 454-8300
thubbard@dca-lawyers.com
anarvaes@dca-lawyers.com

## <u>CERTIFICATE OF SERVICE</u>

   I certify that on October 31, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

Dated:  October 31, 2023

/s/Thomas V. Hubbard

Thomas V. Hubbard (P60575)
Amanda P. Narvaes (P74957)
**DREW, COOPER & ANDING, P.C.**
Attorneys for Plaintiff
80 Ottawa Avenue NW
Aldrich Place, Suite 200
Grand Rapids, MI 49503
(616) 454-8300
thubbard@dca-lawyers.com
anarvaes@dca-lawyers.com